UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ X
                                     :
EDNA O. SEKYERE,                     :
                                     :
                   Plaintiff,        :
                                     :
        v.                           :
                                     :
CITY OF NEW YORK; DEPARTMENT OF      :
FINANCE; MARTHA E. STARKS,           :
COMMISSIONER; PAULINE HYLES,         :
ASSISTANT COMMISSIONER,              :
                                     :
                   Defendants.       :
                                     :
------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/18/09

05 Civ. 7192 (BSJ)(DCF)
**Memorandum & Order**

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

On August 12, 2005 Plaintiff Edna O. Sekyere ("Sekyere" or "Plaintiff") filed suit against Defendants the City of New York, the Department of Finance, Commissioner Martha E. Starks ("Starks"), and Assistant Commissioner Pauline Hyles ("Hyles") (collectively "Defendants") alleging claims pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act of 1967 ("ADEA") arising out of her employment with the City of New York's Department of Finance.  Before the Court is Defendants' Motion for Summary Judgment.  For the reasons set forth below, Defendants' Motion is GRANTED.

**BACKGROUND**

Plaintiff, a 63 year old[1] African-American female, began her employment with the Department of Finance in 1973 as an Office Aid.  (Defs.' Rule 56.1 Stmt. ¶¶ 1-2; Pl.'s Rule 56.1 Stmt. ¶¶ 1-2.)  After approximately six years in that position, she took and passed the civil service examination for the position of Office Associate.  (Defs.' Rule 56.1 Stmt. ¶ 2; Pl.'s Rule 56.1 Stmt. ¶ 2.)  Several years later, Plaintiff took and passed the civil service examination for the position of Principal Administrative Associate ("PAA"); on August 19, 1992 she was promoted to that position.  (Defs.' Rule 56.1 Stmt. ¶ 3; Pl.'s Rule 56.1 Stmt. ¶ 3.)  Plaintiff worked as a "PAA I" in the Department of Finance's Audit Control Division until 2003, when the division was broken into different units.  (Defs.' Rule 56.1 Stmt. ¶ 4; Pl.'s Rule 56.1 Stmt. ¶ 4.)  Effective March 3, 2003 Plaintiff was transferred to the Quality Management Support Group, also known as the Clerical Audit Support Group, within the Department of Finance's Audit Division.  (Defs.' Rule 56.1 Stmt. ¶¶ 4-5, 7; Pl.'s Rule 56.1 Stmt. ¶¶ 4-5, 7.)  The Group is responsible for data entry and other clerical work in support of the Audit Division.  (Defs.' Rule 56.1 Stmt. ¶ 7; Pl.'s Rule 56.1 Stmt. ¶ 7.)

---

[1] The Parties' papers indicate that on November 2, 2007 Plaintiff was 62 years old.  Thus, depending on the exact date of Plaintiff's birth she is now either 63 or 64 years of age.  (See Defs.' Rule 56.1 Stmt. ¶ 1; Pl.'s Rule 56.1 Stmt. ¶ 1.)

2

Since November of 2002, Defendant Hyles — an individual of Guyanese national origin — has held the position of Assistant Commissioner for the Audit Division. (Defs.' Rule 56.1 Stmt. ¶ 7; Pl.'s Rule 56.1 Stmt. ¶ 7.) Hyles oversees more than 200 employees within that division. (Defs.' Rule 56.1 Stmt. ¶ 8; Pl.'s Rule 56.1 Stmt. ¶ 8.) Plaintiff's direct supervisor is Renee Davis — an African American woman — who supervises all eighteen employees in the Clerical Audit Support Group. (Defs.' Rule 56.1 Stmt. ¶ 9; Pl.'s Rule 56.1 Stmt. ¶ 9.)

As a PAA I, Plaintiff's job entails, among other things, mailing notices and correspondence to taxpayers, receiving and recording cases submitted to the Quality Management Support Group for review, reviewing assignments for accuracy and completeness, and word processing. (Defs.' Rule 56.1 Stmt. ¶ 11; Pl.'s Rule 56.1 Stmt. ¶ 11.) The tasks and standards sheet issued to Plaintiff as part of the Department of Finance's annual evaluation procedures also states that Plaintiff, as a PAA I, is to complete "filing, ordering supplies, Xeroxing and sorting per instructions" and is to perform "any reasonable task required by the supervisor." (Defs.' Rule 56.1 Stmt. ¶ 11; Pl.'s Rule 56.1 Stmt. ¶ 11.)

Plaintiff claims that since Defendant Hyles became Assistant Commissioner at her work site, Plaintiff has become the subject of discriminatory treatment because of her age and

3

national origin as an African American female.  (Defs.' Rule
56.1 Stmt. ¶ 19; Pl.'s Rule 56.1 Stmt. ¶ 19.)  Plaintiff asserts
that Defendant Hyles believes African Americans are lazy, and
specifically disapproves of Plaintiff because she is an
American-born black woman.  (Defs.' Rule 56.1 Stmt. ¶ 18; Pl.'s
Rule 56.1 Stmt. ¶ 18.)  Plaintiff claims that Hyles has failed
to promote her and denied her opportunities for training, as
well as subjected her to excessive scrutiny by having
Plaintiff's supervisor monitor the amount of time she spends in
the bathroom.  (Defs.' Rule 56.1 Stmt. ¶¶ 19-20; Pl.'s Rule 56.1
Stmt. ¶¶ 19-20.)  Plaintiff further alleges that she receives
lower-quality work than she believes she should, given her years
of experience.  (Defs.' Rule 56.1 Stmt. ¶ 20; Pl.'s Rule 56.1
Stmt. ¶ 20.)  Plaintiff also complains that she has been
discriminated against based on her age because her co-workers
ask her when she is going to retire and because Hyles has
improperly referred to Plaintiff's age in conversations.
(Defs.' Rule 56.1 Stmt. ¶ 21; Pl.'s Rule 56.1 Stmt. ¶ 21.)

## LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides
that a court shall grant a motion for summary judgment "if the
pleadings, the discovery and disclosure materials on file, and
any affidavits show that there is no genuine issue as to any
material fact and that the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(c). "The party seeking

summary judgment bears the burden of establishing that no

genuine issue of material fact exists and that the undisputed

facts establish her right to judgment as a matter of law."

Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir.

1995). The substantive law governing the case will identify

those facts that are material and "[o]nly disputes over facts

that might affect the outcome of the suit under the governing

law will properly preclude the entry of summary judgment."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

     In determining whether a genuine issue of material fact

exists, a court must resolve all ambiguities and draw all

reasonable inferences against the moving party. Matsushita

Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587

(1986). "If, as to the issue on which summary judgment is

sought, there is any evidence in the record from any source from

which a reasonable inference could be drawn in favor of the

nonmoving party, summary judgment is improper." Chambers v. TRM

Copy Centers Corp., 43 F.3d 29, 37 (2d Cir. 1994).

## DISCUSSION

     In her Complaint, Plaintiff asserts the following three

claims: (1) that Defendants discriminated against Plaintiff in

violation of Title VII on the basis of national origin when they

declined to promote her and assigned her menial tasks in an

effort to force her to retire; (2) that Defendants discriminated against Plaintiff based on national origin in violation of Title VII when Defendant Hyles threatened that she could hurt Plaintiff, and refused to approve Plaintiff's attendance of professional development courses; and (3) that Defendants discriminated against Plaintiff in violation of the ADEA when improper references were made to her age in official discussions. (Compl. ¶¶ 44-47.) Additionally, although not explicitly stated as such, it appears that Plaintiff is asserting both retaliation and hostile work environment claims. The Court finds all of Plaintiff's claims to be without merit and thus GRANTS summary judgment in favor of Defendants.

## I. Plaintiff's Claims of Discrimination Based on Age and National Origin

To make out a claim for discrimination under Title VII or the ADEA, a plaintiff must first establish a prima facie case of discrimination. Windham v. Time Warner, Inc., 275 F.3d 179, 187 (2d Cir. 2001). A Plaintiff meets this burden by showing that: (1) she belonged to a protected class (or was in the protected age group); (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. See Terry v. Ashcroft, 336 F.3d 128, 137-38 (2d Cir. 2003). "Under either statute, once a plaintiff has

6

established a prima facie case, the burden shifts to the

defendant . . . to offer a legitimate, non-discriminatory

rationale for its actions." Id. at 138. Once the defendant has

made such a showing, "to defeat summary judgment . . . the

plaintiff's admissible evidence must show circumstances that

would be sufficient to permit a rational finder of fact to infer

that the defendant's employment decision was more likely than

not based in whole or in part on discrimination." Id. at 138

(quoting Stern v. Trustees of Columbia Univ. in City of New

York, 131 F.3d 305, 312 (2d Cir. 1997)) (internal quotation

marks omitted) (omission in original). In this case, Defendants

argue that Plaintiff has not made a prima facie showing of

discrimination because Plaintiff has not suffered an adverse

employment action. The Court agrees.

A plaintiff suffers an adverse employment action if she

"endures a 'materially adverse change'" in the terms and

conditions of her employment. Galabya v. New York City Bd. of

Educ., 202 F.3d 636, 640 (2d Cir. 2000). "To be materially

adverse, a change in working conditions must be 'more disruptive

than a mere inconvenience or an alteration of job

responsibilities.'" Sanders v. New York City Human Res. Admin.

361 F.3d 749, 755 (2d Cir. 2004) (quoting Terry, 336 F.3d at

138). "Examples of such a change include 'termination of

employment, a demotion evidenced by a decrease in wage or

7

salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'" Id. (quoting Terry, 336 F.3d at 138).

Although not entirely clear from her Complaint, it appears that Plaintiff alleges several different actions taken by her employer: (1) Defendants' refusal "to send Plaintiff to classes to upgrade her skills"; (2) Defendants' failure to provide Plaintiff with an email address despite her requests; (3) Defendants' assignment to Plaintiff of menial tasks like shredding, copying, and filing; (4) Defendants' "yelling and screaming at Plaintiff anytime job related instructions were given"; (5) Defendants' decision to move Plaintiff to sit next to the Assistant Supervisor, who then monitored "every move Plaintiff made"; (6) Defendants' failure to promote Plaintiff despite her "superior knowledge and experience." (Compl. ¶¶ 27-29, 37, 39, 41.) The Court finds that these actions, viewed both individually and cumulatively, do not amount to "adverse employment actions."[2]

Defendants' delay in providing Plaintiff with an email address, Defendants' alleged "yelling and screaming," and

---

[2] Although the record indicates that Plaintiff received at least one negative employment evaluation during the course of her employment and that disciplinary action was taken against her for insubordination, Plaintiff does not mention these incidents in her Complaint. Accordingly, the Court interprets Plaintiff's Complaint as not asserting that these incidents provide a basis for relief and, thus, does not address them.

8

Defendants' decision to move Plaintiff's seat, are not of sufficient significance to amount to materially adverse changes in the terms and conditions of Plaintiff's employment. See Cunningham v. Consol. Edison Inc., No. CV-03-3522, 2006 WL 842914, at *18 (E.D.N.Y. Mar. 28, 2006) (holding that defendant's suspension of plaintiff's email "does not rise to the level of an adverse employment action"); Katz v. Beth Isr. Med. Ctr., No. 95 Civ. 7183, 2001 U.S. Dist. LEXIS 29, at *44 (S.D.N.Y. Jan. 3, 2001) (stating that "[b]eing yelled at, receiving unfair criticism, receiving unfavorable schedules or work assignments, and being told to retire or work part time if she did not like the schedule . . . do not rise to the level of adverse employment actions").

With respect to Plaintiff's allegation that Defendants refused to provide Plaintiff with the same training that was provided other employees, although "[d]enial of training can constitute an adverse employment action where it 'bear[s] on either plaintiff's opportunities for professional growth and career advancement or directly on plaintiff's compensation,'" when "an employee cannot show material harm from a denial of training, such as a failure to promote or a loss of career advancement opportunities, there is no adverse employment action." Hill v. Rayboy-Brauestein, 467 F. Supp. 2d 336, 352 (S.D.N.Y. 2006) (quoting Nakis v. Potter, No. 01 Civ. 10047,

2004 WL 2903718, at *20 (S.D.N.Y. Dec. 15, 2004)). As an initial matter, Plaintiff herself admits, and her employment evaluations confirm, that Defendants did permit her to attend some training classes. (Sekyere Dep. 127:5-24, Aug. 9, 2006; Defs.' Exs. M, O.) Thus, although it is possible that Plaintiff was not sent to as many training classes as other employees — specifically, three classes, by Plaintiff's own estimation — Plaintiff's blanket assertion that "Defendants refused to send Plaintiff to classes to upgrade her skills" is belied by the record. (Sekyere Tr. at 103:9-10; Compl. ¶ 27.) Furthermore, even if Plaintiff's allegations that she was denied permission to attend these three unidentified training classes are true, there is no indication Defendants' refusal to allow Plaintiff to attend these classes had any impact on Plaintiff's potential for career advancement. Plaintiff stated during her deposition testimony that she wanted a promotion to the position of PAA II (from PAA I) and she believed she was qualified for the position. (Sekyere Dep. 79:22-25.) Thus any alleged failure to provide training did not prevent Plaintiff from being qualified for a promotion. Additionally, even in opposing Defendants' Motion, Plaintiff does not contend that her position was altered in any way by not receiving some specific training, nor does she contend that she was disciplined, demoted, transferred, or terminated for lack of some fundamental knowledge that should

10

have been provided for her through training. Accordingly, any failure by Defendants to provide Plaintiff with training does not rise to the level of an adverse employment action.

Similarly, although "significantly diminished material responsibilities" may constitute an adverse employment action, see Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008), based on the undisputed facts the Court cannot conclude that a reasonable jury could find the action alleged here rises to that level. It is not disputed that at all times relevant to this action Plaintiff was employed as a PAA I in the Quality Management Support Group or Clerical Audit Support Group of the New York City Department of Finance. (Defs.' Rule 56.1 Stmt. ¶¶ 5, 7; Pl.'s Rule 56.1 Stmt. ¶¶ 5, 7.) It is also undisputed that the tasks and standards sheet describing Plaintiff's responsibilities and issued to Plaintiff each year as part of the Department of Finance's annual evaluation procedures specifies that Plaintiff, as a PAA I, is to complete "filing, ordering supplies, Xeroxing and sorting per instructions." (Defs.' Rule 56.1 Stmt. ¶ 11; Pl.'s Rule 56.1 Stmt. ¶ 11; see also Defs.' Exs. J, L, N.) Thus, the tasks Plaintiff complains of are explicitly listed as part of her job as a PAA I. Additionally, the record is clear that Plaintiff was not assigned only the "menial" tasks of copying, filing, and shredding; Plaintiff's performance evaluations indicate that her

11

responsibilities have included mailing notices, recording taxpayer information in the appropriate logbooks, typing memorandums, and updating the UBT Access database. (Defs.' Exs. K, M, O.) Even assuming that a disproportionate amount of the work Plaintiff describes as "menial" is performed by Plaintiff as opposed to other employees in her unit, and that the amount of "menial" work Plaintiff is directed to complete has increased over time, such a shift in duties would not be substantial enough to rise to the level of an adverse employment action.

In terms of Plaintiff's failure to promote allegations, it is true that a failure to promote can constitute an adverse employment action. See Brown v. Coach Stores, Inc., 163 F.3d 706, 710 (2d. Cir. 1998). However, an employee bringing such a claim must "allege that she or he applied for a specific position or positions and was rejected therefrom, rather than merely asserting that on several occasions she or he generally requested promotion." Id. at 710. In this case, Plaintiff alleged in her Complaint that she "spoke to [Defendant] Hyles and requested promotion based on her superior knowledge and experience" and "specifically requested to be considered for promotion to supervisor of Clerical Audit Support Group" and that request was denied. (Compl. ¶¶ 37-38.) However, during her deposition Plaintiff admitted that she never applied for a promotion to supervisor of the Clerical Audit Support Group and

12

that the allegation to that effect in her Complaint was "a mistake." (Sekyere Dep. 81:23-82:12.) With respect to whether Plaintiff ever applied for any other promotions, Plaintiff's deposition testimony is confused at best. Although Plaintiff stated at one point that she had not applied for any promotions since Defendant Hyles became Assistant Commissioner, Plaintiff stated at another point that she applied for the PAA II position twice during that time period. (Sekyere Dep. 73:17-25; 81:13-17.) Even if Plaintiff did apply for promotion to the PAA II position, her testimony is completely unclear regarding when she applied for these promotions[3] and which Department offered the promotions. Indeed, with respect to the first of these alleged applications Plaintiff's testimony indicates that she submitted her application to a different unit, one "away from" the reach of Defendant Hyles. (See Sekyere Dep. 82:21-83:12.) With respect to the second alleged application, Plaintiff seems unable to recall any details that could help Defendants identify the precise position for which she applied. (See Sekyere Dep. 82:19-83:3.) Thus, even reading Plaintiff's deposition testimony in the light most favorable to Plaintiff, Plaintiff is unable to identify any specific position within the Department

---

[3] In testimony that is wholly contradictory, Plaintiff at one point states that she applied for promotion to PAA II only subsequent to the commencement of the instant action, but later asserts that she applied for the promotions a year or two years prior to the date of her deposition testimony, a time period before the commencement of this action. (See Sekyere Dep. 74:17-75:5, 76:3-8)

of Finance for which she applied and was rejected. Accordingly,

any alleged failure to promote Plaintiff does not amount to an

adverse employment action.[4]

Thus, the Court concludes that viewed both individually and

cumulatively these actions by Plaintiff's employer do not amount

to adverse employment actions sufficient to form the basis of a

claim under Title VII or the ADEA. Accordingly, because the

record is clear that Plaintiff has suffered no adverse

employment action, Plaintiff's discrimination claims under both

Title VII and the ADEA are DISMISSED.

## II. Plaintiff's Retaliation Claim

Although Plaintiff does not explicitly plead a retaliation

claim in her Complaint, to the extent that Plaintiff asserts

such a claim,[5] the Court finds it to be without merit.

In order to make out a prima facie case of unlawful

retaliation under Title VII or the ADEA, a Plaintiff must adduce

evidence sufficient to permit a rational trier of fact to find

that: (1) she engaged in a protected activity; (2) the employer

---

[4] To the extent Plaintiff argues that she was denied an opportunity to apply
for promotions because of the delay in setting up her email address, that
argument is without merit. Although the record indicates that available
positions were advertised over email and online, positions were also
occasionally advertised on a bulletin board. (See Sekyere Dep. 72:25-73:6;
Davis Dep. 28:22-29:23, Aug. 22, 2006.) Additionally, Plaintiff has not
identified any specific promotions for which she would have applied had she
been informed of the openings.

[5] Even though not listed as a specific claim, Plaintiff describes alleged acts
of retaliation in sufficient detail in her Complaint to put the issue before
the Court. See Cruz v. Coach Stores, Inc., 202 F.3d 560, 568-70 (2d Cir.
2000).

was aware of this activity; (3) the employer took adverse action against her; and (4) a causal connection existed between the protected activity and the adverse action. See Kessler v. Westchester County Dep't of Soc. Servs., 461 F.3d 199, 205-06 (2d Cir. 2006). With respect to the requirement that a plaintiff demonstrate her employer took adverse action against her, the Supreme Court has held that Title VII's anti-retaliation provision, unlike its substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment. Instead, in the retaliation context, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (quoting Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006). The Court went on to emphasize that the action taken must be materially adverse because "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work." Id.

In her Complaint, Plaintiff asserts several acts of retaliation: (1) "[a]fter Plaintiff received administrative action determination by [the] State Human Rights Division,

15

Defendants['] agents increased their level of hostilities by
yelling and screaming at Plaintiff anytime job related
instructions were given"; (2) Plaintiff "was moved after the
complaint to sit next to the Assistant Supervisor, who monitored
every move Plaintiff made"; and (3) Defendant Hyles "informed
Plaintiff that she could 'hurt' her if she continue[d] to file
'these complaints.'" (Compl. ¶¶ 39, 41, 43.) Additionally,
during her deposition Plaintiff stated she feels Defendant Hyles
is retaliating against her because Hyles and other employees
"mimic" Plaintiff's behavior in a harassing manner. (Sekyere
Dep. 118:17-119:16.) With the exception of the alleged threat
by Defendant Hyles, these behaviors do not amount to materially
adverse actions by Plaintiff's employer. Reassigning
Plaintiff's seat, engaging in annoying "mimicking" behavior, and
giving job instructions in a raised voice may leave Plaintiff
feeling slighted or annoyed and indicate a "simple lack of good
manners" on the part of Defendants, but they are not the kind of
actions that would dissuade a reasonable worker from making or
supporting a charge of discrimination. See White, 548 U.S. at
68. With respect to Defendant Hyles's alleged statement that
she could "hurt" Plaintiff, contrary to Plaintiff's assertions
in her Complaint, there is no indication in the record that this
statement, if made, was made in response to any complaints filed
by Plaintiff. During her deposition Plaintiff testified that

16

Defendant Hyles "called [her] in her office and . . . told [her] she could hurt [her]." (Sekyere Dep. 27:5-7.) As stated by Plaintiff, however, this interaction occurred during 2003; Plaintiff only filed her complaint with the New York State Department of Human rights in 2004.[6] (See Defs.' Exs. V, W.) Additionally, there is no indication in Plaintiff's deposition testimony — or anywhere else in the record — that these alleged statements were made in response to any complaints filed by Plaintiff. Accordingly, to the extent that Plaintiff has stated a claim for retaliation, that claim is DISMISSED.

### III. Plaintiff's Hostile Work Environment Claim

Although Plaintiff does not explicitly plead a hostile work environment claim in her Complaint, to the extent that Plaintiff asserts such a claim,[7] it is also without merit.

Under both the ADEA and Title VII, to prevail on a hostile work environment claim, a plaintiff must show that the "workplace is permeated with 'discriminatory intimidation, ridicule, and insult' . . . that is 'sufficiently severe or

---

[6] Although Plaintiff alleges in her Complaint that she "complained to Davis that her assignments were reduced to menial tasks because of her age and national origin as an American born black female," there is no indication in the record that such complaints were made, or that any complaints regarding Defendants' alleged discrimination were made, with the exception of Plaintiff's complaint with the New York State Department of Human Rights and the instant action. (See Hines-Smith Dep. 29:7-16, Aug. 22, 2006.) There is additionally no indication that any health and safety complaints filed by Plaintiff were complaints about any alleged discrimination.
[7] Given that the essential elements of a hostile work environment claim appear in Plaintiff's Complaint and that both parties argue the issue of a hostile work environment in their summary judgment briefs, the Court finds consideration of the claim to be appropriate. See Cruz, 202 F.3d at 568-70.

pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65, 67 (1986)); see Terry, 336 F.3d at 147-48. A plaintiff "must show not only that she subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive." Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006). "Isolated incidents typically do not rise to the level of a hostile work environment unless they are 'of sufficient severity' to 'alter the terms and conditions of employment as to create such an environment.'" Id. (quoting Patterson v. County of Oneida, 375 F.3d 206, 227 (2d Cir. 2004)). "Generally, 'incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" Id. (quoting Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002)). In other words, "a plaintiff alleging a hostile work environment 'must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment.'" Alfano, 294 F.3d at 374 (quoting Cruz, 202 F.3d at 570). "To decide whether the threshold has been reached, courts examine the case-specific circumstances in their totality and evaluate the severity,

18

frequency, and degree of the abuse." Id. "Where reasonable
jurors could disagree as to whether alleged incidents of racial
insensitivity or harassment would have adversely altered the
working conditions of a reasonable employee, the issue of
whether a hostile work environment existed may not properly be
decided as a matter of law."[8] Patterson, 375 F.3d at 227.

In this case, the conduct Plaintiff alleges in her
Complaint is insufficient as a matter of law to meet the
threshold of severity or pervasiveness required for a hostile
work environment. Plaintiff alleges that Defendant Hyles
expressed that she does not like African American women because
she believes them to be too "laid back," that Plaintiff should
retire due to her old age, and that she could "hurt" Plaintiff.
(Compl. ¶¶ 23, 25, 40, 43.) With respect to Defendant Hyles's
alleged comments about Plaintiff's race, national origin, and
age, there is no evidence in the record that such remarks were
made with the frequency required to state a claim for a hostile
work environment. Although Plaintiff alleged during her
deposition testimony that Defendant Hyles had made derogatory
remarks about African American women "many times," Plaintiff
could cite to only one specific incident in which she overheard
Defendant Hyles make such a statement. (Sekyere Dep. 67:10-

---

[8] The standard for successfully asserting a hostile work environment claim is
the same under both Title VII and the ADEA. See Terry, 336 F.3d at 147-48.

69:6.)   Similarly, with respect to Defendant Hyles's alleged
comments about her age Plaintiff only cited to one specific
instance during her deposition testimony in which Defendant
Hyles said "Edna, it is time for you to go. . . . You have been
here long enough Edna." (Sekyere Dep. 89:1-3.)   Later during
her deposition, when asked whether Defendant Hyles comments
about her age, Plaintiff responded that Defendant Hyles "does
not say anything to [her]." (Sekyere Dep. 142:2-3.)
Additionally, Plaintiff conceded during her deposition that
"there are about five levels of supervision between [her] and
Pauline Hyles," that she doesn't currently "have any direct
interaction" with Defendant Hyles, and that the last time she
did have direct interaction with Defendant Hyles was a "long,
long, long, long time" ago. (Sekyere Dep. 27:21-28:17, 135:23-
25.)   Thus, to the extent that Defendant Hyles has made
derogatory or threatening remarks to Plaintiff, Plaintiff's
admitted limited interactions with Defendant Hyles indicates
that those remarks could not be of sufficient pervasiveness and
frequency to create a hostile work environment.  With respect to
Plaintiff's additional allegations that, inter alia, other co-
workers asked her when she would retire, that Renee Davis
closely supervised her work, and that Renee Davis followed her
to the bathroom, those actions do not indicate that the
environment faced by Plaintiff was so severe as to be abusive.

20

Accordingly, to the extent that Plaintiff states a claim of
hostile work environment, that claim is DISMISSED.

## CONCLUSION

For the reasons set forth above, Defendants' Motion for
Summary Judgment is GRANTED. Because no further issues remain
to be decided, the Clerk of the Court is directed to close the
case.

**SO ORDERED:**

Barbara S. Jones
**UNITED STATES DISTRICT JUDGE**

Dated:     New York, New York
           March /8, 2009

21